**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:13-cv-00233-MR-DLH**

| | | |
|---|---|---|
| **JASON S. CAMPBELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Summary Judgment [Doc. 10], and the Defendant's Motion for Summary

Judgment [Doc. 13].

## I.    PROCEDURAL HISTORY

The Plaintiff Jason Campbell filed an application for disability

insurance benefits and supplemental security income on September 2,

2009, alleging that he had become disabled as of January 15, 2009.

[Transcript ("T.") 163, 172].  The Plaintiff's application was denied initially

[T. 98-101, 102-113, 116-131] and upon reconsideration [T. 120-131].  The

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")

which occurred on September 15, 2011.  [T. 37-64].  On October 12, 2011,

the ALJ issued an unfavorable decision.  [T. 18-30].  On June 24, 2013, the Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  [T. 1-5].  The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, see Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court does not review a final decision of the Commissioner de novo.  See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if

the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education, or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## V.    THE ALJ'S DECISION

On October 12, 2011, ALJ Lamb issued a decision denying the Plaintiff's claim.  [T. 18-30].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was September 30, 2014 and that he had not engaged in substantial gainful activity since January 15, 2009.  [T. 20].  The ALJ then found that the medical evidence established the following severe impairments: degenerative disc disease, osteoarthritis, Bipolar I Disorder, Panic Disorder without Agoraphobia, Opiate Dependence, Benzodiazepine Dependence, and Cannabis Dependence.

[T. 20].  The ALJ determined that none of Plaintiff's impairments met or equaled a listing.  [T. 21].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to "perform simple, repetitive routine sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) that does not require walking on uneven terrain, climbing ladders/ropes/scaffolds, or operating leg/foot controls."  [T. 22].  The ALJ found that the Plaintiff was unable to perform any past relevant work.  [T. 28].  The ALJ found that the transferability of job skills is not material to the determination of disability since the Medical-Vocational Rules yield a finding of "not disabled."  Based thereon he ruled that the Plaintiff was not disabled and that there were jobs existing in significant numbers in the national economy that the Plaintiff could perform.  [T. 29].

## VI.    DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ failed to apply the proper standard of disability, (2) that the ALJ failed to properly assess impairments at Step Two and in combination, (3) that the ALJ failed to properly assess pain, (4) that the ALJ failed to properly

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

assess credibility, (5) that the ALJ failed to meet his burden at Step Five when he posed an incomplete hypothetical question to the VE, and (6) that the ALJ improperly weighed the opinion evidence. [Doc. 10-1]. The Court will address each of these assignments of error in turn.

## A.    The ALJ's Application of the Disability Standard

The Plaintiff claims that the ALJ "applied an improper standard of disability." [Doc. 10-1 at 6]. The Plaintiff points out that Social Security's meaning of disability "only requires one's impairments to preclude 'substantial gainful activity'" rather than "preclud[ing] all work activity." [Id.]. Further, the Plaintiff argues that the ALJ "put the cart before the horse" in determining the Plaintiff's RFC by finding the Plaintiff's pain complaints not credible as inconsistent with the RFC. [Doc. 10-1 at 7].

Disability is defined in 42 U.S.C. § 423(d)(1)(A) as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." The ALJ's decision mentions that the Plaintiff's "activities are certainly inconsistent with an individual who is *totally disabled.*" [T. 27] (emphasis added). The Plaintiff argues that he did not have to prove that he was "totally disabled," but rather than he could not

perform substantial gainful activity. Upon review of the ALJ's decision, this Court finds that the ALJ followed the proper disability standard, as he discussed and applied the entire sequential evaluation process for disability. [T. 18-30]. Thus, any error in the ALJ's language of "totally disabled" was harmless in this case.

Further, the Plaintiff notes that "the cart [has been put] before the horse" since the "RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). See 20 C.F.R. § 404.1529(a)." <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006). He suggests that the ALJ committed error by stating "[t]hese symptoms [referring to pain complaints] are not credible to the extent they are inconsistent with the above residual functional capacity." [Doc. 10-1 at 6, T. 27]. The Plaintiff argues that the prejudicial effect of this error "is not cured by the fact that the ALJ recited the correct disability and credibility standards in boilerplate; it is clear that his actual analysis, and final decision, were based upon non-existent standards imposing burdens well beyond those imposed by the Social Security Act which binds him." [Doc. 10-1 at 7].

Courts within the Fourth Circuit have found the aforementioned "boilerplate" language to be permissible where the credibility finding was

properly supported by substantial evidence within the record.  See Webb v. Astrue, No. 2:11-cv-103, 2012 WL 3061522, at *16 (N.D. W.Va. Jul. 26, 2012) (noting that "[a]lthough the ALJ may have used a 'template' to draft her decision, the substance of the decision itself supports the credibility determination.")  See also Smith v. Astrue, No. 2:11-cv-32, 2012 WL 1435661, at *6 (N.D. W.Va. April 24, 2012) (holding that the ALJ's findings were not error as "boilerplate language" since the ALJ adequately noted evidence to support his credibility finding).

The ALJ's credibility assessment was proper in this case.  As will be explored further below, the ALJ discussed the Plaintiff's conditions, treatment, statements, and activities to support his finding regarding the Plaintiff's credibility.  [T. 27-28].

Thus, the Plaintiff's first assignment of error is without merit.

## B.  The ALJ's Application of Step Two

Next, the Plaintiff argues that the ALJ failed to find many of his severe physical impairments at Step Two, namely his abdominal pain, diffuse/chronic pain, knee pain, numerous mental conditions, and head injury.  [T. 8-10].  20 C.F.R. §§ 404.1520(c) and 416.920(c) require the presence of a severe "impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability to do basic work activities."

Here, the ALJ found that the medical evidence established that the Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, Bipolar I Disorder, Panic Disorder without Agoraphobia, Opiate Dependence, Benzodiazepine Dependence, and Cannabis Dependence. [T. 20]. "[I]t is not error for an ALJ not to make a determination regarding the severity of all of a claimant's impairments where the ALJ finds the claimant has a severe impairment or combination of impairments, and the ALJ considers the omitted impairments at later steps in the sequential evaluation." Stacey v. Astrue, No. 1:09-cv-181, 2011 WL 841356 at *3 (W.D.N.C. Jan. 28, 2011), adopted in 2011 WL 873463 (W.D.N.C. March 7, 2011).

The ALJ considered the Plaintiff's abdominal pain, digestive problems, and kidney problems, yet found that "[f]ollowing a thorough review of the documentary evidence, the undersigned concludes the claimant's digestive problems result in no more than mild limitations of functioning and are 'not severe' as that term is defined in the Social Security Act." [T. 22]. The ALJ noted the Plaintiff's frequent nausea and diarrhea, and outlined the Plaintiff's treatment for and improvement with

abdominal symptoms. [Id.]. Further, the ALJ considered the Plaintiff's kidney problems and treatment for such problems. [Id.]. The ALJ noted that such problems did not qualify as severe. [T. 22-23].

Further, the ALJ discussed the Plaintiff's hip pain, back pain, leg pain, knee pain, and muscle/joint pain, as well as the care and treatments that the Plaintiff has undergone for such symptoms. [T. 23-24]. Regarding hip and knee pain, the ALJ noted that "[i]n August 2011, the claimant reported adequate pain control" and "[w]hile the claimant has had hip and knee replacement surgeries, with the exception of some muscle spasms, edema in the knee, [and] back tenderness, examinations have been essentially normal, including no motor deficits, no sensory deficits, essentially normal range of motion, and 5/5 strength in the lower extremities bilaterally." [T. 25, 27]. He further noted that "[b]ack exams have been normal, as well as MRI scans." [T. 27]. Additionally, the ALJ stated that "[i]n terms of the claimant's alleged back, hip, knee and joint pain, the undersigned recognizes the claimant has some limitations as the result of same; however, the record fails to indicate an impairment, or impairments, of the severity as to preclude all work activity." [Id.].

The ALJ explained that the Plaintiff still had physical abilities, as reflected in the record. [T. 23-25]. Particularly, the ALJ referenced the

third party questionnaire which noted that the Plaintiff could manage his personal care, prepare his own meals, do laundry and cleaning, go out alone, shop for food and personal items, count change, and follow spoken instructions. [T. 27]. Notably, the ALJ considered the Plaintiff's physical limitations in his RFC determination, in which he noted that the Plaintiff could perform sedentary work that "does not require walking on uneven terrain, climbing ladders/ropes/scaffolds, or operating leg/foot controls." [T. 22]. Although the ALJ did not discuss the Plaintiff's head injury, any such error was rendered harmless since the Plaintiff did not argue how this injury "significantly limits [his] physical or mental ability to do basic work activities" according to §§ 404.1520(c) and 416.920(c).[2]

Additionally, the ALJ evaluated the Plaintiff's mental impairments in this case. [T. 26]. He noted, however, that "[d]espite his allegations of severe mental limitations, the claimant is able to perform activities of daily living independent of others and take medication as required." [T. 28].

---

[2] The Plaintiff argues that the ALJ misquoted the record when he referred to "adequate pain control" [T. 25] but failed to qualify such a statement with the doctor's additional note that the pain was controlled better "as long as he does no lifting or bending." [T. 1412]. Any error in the ALJ's failure to discuss this note of limitation is harmless, however, based on the ALJ's finding that the Plaintiff could only perform sedentary work. [T. 22]. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

Thus, "the record fails to indicate a mental impairment, or impairments, of the severity as to prevent all work activity." [Id.]. The ALJ further discussed numerous factors that diminished the Plaintiff's credibility in this case. [Id.].

Although the Plaintiff has cited numerous medical records relating to the Plaintiff's medical conditions which were not found to be severe in this case, [Doc. 10-1 at 8-11], he has failed to argue how such conditions actually "limit[ ] [his] physical or mental ability to do basic work activities" in accordance with §§ 404.1520(c) and 416.920(c).

Further, the Plaintiff argues that the ALJ's treatment of "medically determinable impairments" was "fragmented, contrary to the dictates of the regulations." [Doc. 10-1 at 11]. Specifically, he contends that the ALJ failed to consider the Plaintiff's non-severe conditions, as required by SSR 96-8p. [Id.]. Contrary to the Plaintiff's argument, the ALJ adequately discussed the Plaintiff's physical and mental conditions which he found to be non-severe impairments. [T. 21-28]. As previously discussed, the ALJ outlined the Plaintiff's treatment for numerous physical and mental impairments which were not actually found to be severe.

Additionally, the Plaintiff indicates that he had "limited specialist treatment" for his gastroenterology needs due to his inability to afford such

treatment. [Doc. 10-1 at 11]. The Plaintiff cites to <u>Gordon v. Schweiker</u>, 725 F.2d 231, 237 (4th Cir. 1984) for his argument that "[a] claimant may not be penalized for failing to seek treatment he cannot afford." [Doc. 10-1]. The <u>Gordon</u> case is distinguishable, however, because it holds that an ALJ cannot deny benefits to a claimant based on the premise that he did not follow prescribed treatment when his reason for failing to pursue that treatment is an inability to afford it. <u>Gordon</u>, 725 F.2d at 237. Here, the ALJ gave no indication that the Plaintiff failed to follow prescribed treatment.

Thus, the Plaintiff's second assignment of error is without merit.

## C.    The ALJ's Pain Analysis

The Plaintiff next argues that the ALJ "failed in his duty to explain the medically determinable impairments expected to cause pain." [Doc. 10-1 at 11]. The disability pain evaluation is a two-step process. <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). "First, the claimant must produce 'objective medical evidence showing the existence of a medical impairment(s) which could reasonably be expected to produce the pain alleged." <u>Id.</u> (internal quotation marks omitted). "Second, the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work, must be evaluated." <u>Craig</u>, 76 F.3d at 595. The ALJ must

evaluate the claimant's statements and "all the available evidence, including the claimant's medical history, medical signs, and laboratory findings." Id. (internal quotation marks omitted).

The Plaintiff argues that the ALJ did not properly assess his abdominal pain, kidney pain, hip pain, and knee pain. [Doc. 10-1 at 12-14]. Specifically, the Plaintiff argues that the ALJ failed at his "duty of explanation" which is "always an important aspect of the administrative charge." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). The "duty of explanation" is met when the ALJ presents "'findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing his conclusion." Wyatt v. Bowen, 887 F.2d 1082, 4 (4th Cir. 1989) (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)). Relevant factors for the ALJ to consider when assessing pain are (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and

(7) other factors concerning functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. § 404.1529.

As previously discussed, the ALJ properly assessed the Plaintiff's pain, and found that it was not severe in accordance with the record of the Plaintiff's treatment, care, and daily activities. [T. 23-25]. The ALJ considered the findings of "attending hospital and emergency room physicians; treating physicians at Waynesville Family Practice, Hazelwood Family Medicine, Southeastern Sport Medicine, Midway Medical Center, Mission Neurology, CarePartners Home Health; and Dr. Dubiel . . ." [T. 27]. The ALJ discussed the Plaintiff's accidents, hospitalizations, and treatment for various types of pain. [T. 23-27]. The ALJ stated:

> [a]lthough the state-agency medical consultants opined the claimant could perform a limited range of light work, the undersigned has *given the claimant every benefit of doubt in considering his allegations of pain* and limitations in limiting him to sedentary work that does not require walking on uneven terrain, climbing ladders/ropes/scaffolds, or operating leg/foot controls. Such conclusion is consistent with the overall medical evidence of record.

[T. 27-28]. The ALJ additionally noted factors which somewhat diminished the Plaintiff's credibility, namely the fact that the Plaintiff had kept working part-time as a plumber's assistant, was able to go back to school and obtain both an Associate's degree in computer science and a Bachelor's

degree in mechanical engineering, and had continued to use marijuana on a daily basis. [T. 28].

Further, the ALJ indicated that the Plaintiff "continues to engage in a wide range of activities of daily living without supervision." [Id.]. Indeed, a claimant need not deteriorate to a "bedridden" state to obtain benefits. Totten v. Califano, 624 F.2d 10, 11 (4th Cir. 1980). The ALJ must consider the claimant's activities of daily living as one of the numerous aforementioned factors in 20 C.F.R. § 404.1529 when assessing pain. Upon review of the ALJ's decision, this Court finds that the ALJ properly assessed the Plaintiff's activities of daily living. As noted previously, any error in the ALJ's language of "totally disabled" was harmless in this case because the ALJ followed the proper disability standard as he discussed and applied the entire sequential evaluation process for disability.

Additionally, the ALJ properly characterized the Plaintiff's use of polysubstances. [Doc. 10-1 at 16]. According to 20 C.F.R. § 404.1535, the proper determination for whether drug addiction is a contributing factor material to a claimant's disability is whether the decision maker would still find the claimant disabled if he stopped using the drugs. Here, the ALJ noted that "[i]t is expected if the claimant followed a medical regimen and ceased the use of polysubstances, he would see additional improvement.

*Given his current impairments*, the claimant is able to perform simple, repetitive, routine tasks." [T. 28] (emphasis added). Thus, although the ALJ noted that the Plaintiff would likely improve if he ceased his drug use, he has presupposed the Plaintiff's current condition upon which to base his findings. [Id.]. Thus, the Plaintiff's polysubstance reliance was not material to the ALJ's decision in this case.

Finally, any error that the ALJ made by considering the Plaintiff's degrees in his decision [T. 28] while instructing the VE to assume that the Plaintiff had "received no certificates or degrees" from his education [T. 59] is rendered harmless by the fact that the ALJ's decision is still based on substantial evidence of record.

Therefore, the Plaintiff's third assignment of error is without merit.

### D.    The ALJ's Credibility Assessment of the Plaintiff

The Plaintiff next argues that the ALJ erred in not considering Plaintiff's statements about his symptoms in accordance with SSR 96-7p. SSR 96-7p requires the ALJ to "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record . . ." "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms

have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p.

Although the ALJ did not refer to specific statements of the Plaintiff, he noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  [T. 27].  Thus, the ALJ *considered* the Plaintiff's statements in accordance with SSR 96-7p.

Therefore, the Plaintiff's fourth assignment of error is without merit.

### E.    The ALJ's Hypothetical Question to the VE

The Plaintiff further argues that the ALJ erred in failing to pose a complete hypothetical question to the VE.  [Doc. 10-1 at 19].  The Plaintiff specifically refers to the fact that the ALJ gave great weight to Dr. Barnes' opinion, [Doc. 10-1 at 19-20], and he notes that Dr. Barnes had "opined that the claimant's ability to perform routine repetitive tasks would be 'compromised.'"  [Doc. 10-1 at 20, T. 1044].  The Plaintiff further notes that Dr. Barnes had "stated that his ability to understand, retain, and follow instructions would be 'moderately impaired'" and had "opined that Plaintiff's occupational competence was 'below average' on a scale where 'below average' was the lowest rating."  [Doc. 10-1 at 20, T. 1045].

The ALJ questioned the VE for this case in terms of unskilled work. [T. 59-63]. Unskilled work is explained in SSR 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15. Although Dr. Barnes had "opined that the claimant's ability to perform routine repetitive tasks would be 'compromised'" [Doc. 10-1 at 20, T. 1044] and "that his ability to understand, retain, and follow instructions would be 'moderately impaired'" [Doc. 10-1 at 20, T. 1045], the ALJ's questioning in terms of unskilled work was not inconsistent with Dr. Barnes' opinions. The ALJ limited the instructions to simple routine tasks. [T. 60]. Both State agency psychological consultants indicated that the Plaintiff would be capable of performing simple, routine, repetitive tasks. [T. 1031-32, 1064]. Finally, "below average" occupational competence does not necessarily suggest that the Plaintiff is incapable of working in any occupation.

Thus, the Plaintiff's fifth assignment of error is overruled.

## F. The ALJ's Weighing of Opinion Evidence

Next, the Plaintiff argues that the ALJ did not properly weigh the Plaintiff's opinion evidence, particularly with respect to the state agency opinions.

An ALJ must evaluate every medical opinion received in the record, regardless of its source. 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment [ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). In evaluating the weight of a medical source, the ALJ must consider certain factors including: the examining relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the medical source, the consistency of the medical source, the specialization of the provider, and any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1–6).

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an

impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2).  Thus, an opinion of a treating physician is not entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record. Id.; see also, Rogers v. Barnhart, 204 F. Supp. 2d 885, 893 (W.D.N.C.2002) ("Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records").

Additionally, the opinions of non-examining state agency medical sources must be considered by the ALJ, insofar as they are supported by evidence in the case record, as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.  20 C.F.R. §§ 404.1527(e); SSR 96–6p, 1996 WL 374180, at *2.  The ALJ must explain the weight given to State agency findings in his or her decision.  SSR 96–6p, at *1.  Further, the ALJ must explain why the State agency opinion was not adopted in his determination of the claimant's RFC if his findings conflict with the State agency opinion.  SSR 96–8p, 1996 WL 374184, at *7.

In the present case, the ALJ noted the findings of the state-agency medical consultant Melvin Clayton, M.D. in January 2010 [T. 23], the findings of consultative examiner Barbara Dubiel, M.D. in August 2010 [T. 23], and the findings of state-agency medical consultant Stephen Levin, M.D. in September 2010 [T. 25] regarding the Plaintiff's physical health. Although the ALJ did not specifically state the weight which he afforded to the findings of the physical consultative examiners, any error he made is rendered harmless by the fact that he "g[ave] the claimant every benefit of doubt in considering his allegations of pain and limitations in limiting him to sedentary work" with restrictions rather than adopting the opinions of the consultative examiners deeming the Plaintiff capable of performing light work. [T. 27-28].

Further, the ALJ noted the findings of the state-agency examiner Grace Barnes, Psy.D. in March 2010 and July 2010 [T. 26-27], the findings of Ben Williams, Ph.D. in March 2010 [T. 26], and the findings of state-agency medical consultant April L. Strobel-Nuss, Psy.D. in July 2010 [T. 27] regarding the Plaintiff's mental health. In his assessment of residual functional capacity, the ALJ indicated that "[a]lthough the state-agency medical consultants opined the claimant had moderate restriction of activities of daily living and moderate difficulties maintaining social

functioning, such opinions are given little weight as they are not consistent with the overall medical evidence of record."  [T. 28].  The ALJ also noted that he gave great weight to Dr. Barnes' opinions since they were "generally consistent with the overall medical evidence of record and above-stated residual functional capacity."  [Id.].

The Plaintiff particularly argues that the record was missing a page which "would have recited what (if any) of the Plaintiff's many, many other medical records that Dr. Levin reviewed" and that "[i]t is not clear whether the ALJ had this last page . . ."  [Doc. 10-1 at 22].  The Plaintiff refers to T. 1085, but has not argued the basis for his belief that a page was missing from the record.  Even if a page was missing from the ALJ's review, the Court finds that the evidence in the administrative record was sufficient for the ALJ to make his decision in this case based on substantial evidence within the Plaintiff's record.

Further, the Plaintiff argues that the ALJ did not properly assess his postural limitations.  [Doc. 10-1 at 22-23].  He notes that both of the state agency physicians had opined that he "had worse postural limitations than the ALJ found."  [Doc. 10-1 at 23].  The state agency physicians had noted postural limitations on the Plaintiff's ability to climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl.  [T. 996,

1080].  The ALJ, however, only noted in his decision the postural limitation of not walking on uneven terrain, climbing ladders/ropes/scaffolds, or operating leg/foot controls.  [T. 22].  This discrepancy, however, does not warrant remand because the ALJ found that the Plaintiff could only perform sedentary work.  [Id.].  Sedentary work "is defined as one which involves sitting, [with only] a certain amount of walking and standing [which] is often necessary in carrying out job duties."  20 C.F.R. § 404.1567.  Thus, a job which consists primarily of sitting will not require the Plaintiff to go beyond the postural limitations he asserts.  Notably, the only postural limitation which the state agency physicians found that the Plaintiff could *never* perform was climbing ladders/ropes/scaffolds.  [T. 1080].  This postural limitation was incorporated into the ALJ's decision.  [T. 22].  The Plaintiff has failed to show how the addition of any particular limitation would result in a different finding regarding his disability.

The Plaintiff additionally argues that the state agency sources had noted additional mental restrictions than the ALJ considered.  [Doc. 10-1 at 23].  The ALJ based his decision regarding the Plaintiff's mental health on substantial evidence within the record, however.  He noted the following regarding the Plaintiff's mental health:

> [He] had the ability to: complete three step
> instructions; carry out short and simple instructions;

and interact appropriately with the public, peers and/or coworkers, with some difficulty. Although it was noted the claimant may have difficulty in adapting to changes in routine situations, it was noted he could adjust over time (Exhibits 18F and 19F).

[T. 26]. Thus, the ALJ adequately weighed the Plaintiff's mental limitations and ability to "adjust over time," and the Plaintiff's sixth assignment of error is without merit.

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED;** the Defendant's Motion for Summary Judgment [Doc. 13] is **GRANTED**; the decision of the Commissioner is **AFFIRMED**; and this case is **DISMISSED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge